**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 12-20193-CIV-SEITZ

IN RE APPLICATION OF
DEPARTMENT OF HOMELAND
SECURITY, IMMIGRATION AND
CUSTOMS ENFORCEMENT,

Petitioner,

vs.

HAROLD ROBENS,
a/k/a GILES ROBINS,
a/k/a GILLES ROBINS BIEN AIME,

Respondents.

_______________________________________/

**ORDER GRANTING PETITION FOR EMERGENCY COURT ORDER TO ADMINISTER NUTRIENTS**

THIS MATTER is before the Court upon the Government's Petition for an Emergency Court Order to Administer Nutrients. [DE 1]. Hearings were held on January 19, 2012 and January 23, 2012. Respondent, who has been on a hunger strike since December 24, 2011,[1] was present at the hearings. Paul Rashkind, Assistant Federal Public Defender, appeared at the January 19 hearing to represent Respondent, but Respondent refused his representation.[2] Respondent requested that the Court continue the hearing until Monday, January 23 to allow him time to review the Government's Petition, consult with his family, and attempt to obtain an attorney of his own choosing. After hearing testimony from Dr. Luis Ortega, Respondent's treating physician at the Krome Service Processing Center ("Krome") where Respondent is detained, as to Respondent's medical condition, the Court continued the Hearing until

[1]Respondent has been drinking water.

[2]The Court appointed the Federal Public Defender's office to represent Respondent.

January 23 at 9 a.m. Thereafter, on January 20, the Government filed an affidavit from Dr. Ortega informing the Court that Respondent had refused to submit to blood testing, vital sign testing, and weight measurement and that as of his weigh-in on January 19, Respondent had lost a total of thirty-one (31) pounds. Dr. Ortega further stated that without the tests, he could not assess whether Respondent would remain in a safe health state until the hearing on January 23. [DE 12-1]. As a result, the Court issued an Order directing Respondent to submit to blood testing, vital sign testing, and weight measurement by 4 p.m. on January 20. [DE 13]. Respondent complied with the Court's Order.

Respondent appeared at the January 23 hearing. In addition, Interim Federal Public Defender Michael Caruso appeared and Respondent accepted his representation.[3] The Court heard testimony from Dr. Ortega and Anthony Aiello, Krome's Assistant Field Office Director. Dr. Ortega gave testimony with respect to Respondent's laboratory results from January 17, January 20, and January 22, which show a deterioration in Respondent's condition. Dr. Ortega testified that Respondent has now lost thirty-five (35) pounds or twenty (20) percent of his body weight. In addition, Dr. Ortega testified that there is blood in Respondent's urine and Respondent is no longer having bowel movements, but instead is now moving mucus, which is tainted with blood.[4] Moreover, the Government submitted an affidavit from Dr. Ortega with the Petition. In the affidavit, dated January 17, 2012, Dr. Ortega states that if Respondent continues his hunger strike, immediate medical intervention may become necessary in the next ten days (by January 27, 2012). [DE 1, Exh. B at ¶ 16]. Dr. Ortega further states that Respondent's "[c]ontinued fasting will result in permanent damage to his internal organs and has the potential to become life threatening. Metabolic imbalance, if left untreated, will cause fatal arrhythmia and/or

[3]In addition, the Government presented evidence, specifically a Visitor's Log from Krome showing that Respondent met with another attorney on Friday, January 20.

[4]The Court admitted the laboratory reports into evidence.

cardiac arrest." [*Id.*]. Dr. Ortega concludes that the issuance of a Court order to force feed Respondent is "medically necessary to preserve and sustain [Respondent's] life." [*Id.* at ¶ 18].

The Court also heard testimony from Mr. Aiello who stated that he scheduled a meeting between Respondent and Reverend Luke Harrington with the hope that the Reverend could persuade Respondent to end his hunger strike. The meeting took place on January 21, but Respondent continued his hunger strike.[5] Mr. Aiello also submitted an affidavit with the Government's petition and states that Respondent's death as a result of the hunger strike would adversely affect efforts to maintain security and good order at Krome. [DE 1, Exh. A at ¶ 13].[6]

Finally, the Court heard from Respondent at both hearings. Respondent states that he is on the hunger strike to protest his unfair and unjust detention by the Government. Respondent contends that he has been granted asylum and should be released pending his current appeal before the Board of Immigration Appeals. In sum, Respondent maintains that his detention is unlawful and, as such, he should not be force-fed, but instead released from custody. The Court explained to Respondent that it does not have jurisdiction over his immigration appeal and, thus, cannot order Respondent released from custody, and that the only issue before the Court is whether Respondent must be force-fed to preserve his life.

The Court has conducted a thorough review of the Petition, the affidavits annexed thereto, and the relevant case law. As a result of this review as well as the testimony of Dr. Ortega, Mr. Aiello, and Respondent at the hearings and the evidence submitted at the hearings, specifically the laboratory reports, the Court finds that nutrients must be administered to Respondent, by force, in order to preserve

---

[5]Mr. Aiello also testified that he has given permission for an additional meeting between the Reverend, Respondent, and Respondent's cousin on Wednesday, January 25, 2012.

[6]Mr. Aiello identifies a number of security concerns including food strikes or violent acts by detainees in reaction to Respondent's death, hunger strikes by other detainees, and detainees' reluctance to seek medical treatment due to perceived ineffectiveness of Krome medical staff in preventing Respondent's death. [*Id.*].

Respondent's life. Accordingly, it is

ORDERED THAT

(1) The Government's Petition for an Emergency Court Order to Administer Nutrients is GRANTED. [DE 1].

(2) The Government is authorized, through competent medical authority, to involuntarily administer nutrients to Respondent through either a nasogastric tube and/or an intravenous line.

(3) The Government is further authorized to restrain Respondent if he attempts to remove the nasogastric tube and/or intravenous line.

(4) In addition if Respondent refuses blood draws, the Government shall, through competent medical authority, involuntarily draw blood to assess Respondent's nutritional status and the efficacy of the feedings.

(5) This Order shall remain in effect until **Monday, February 20, 2012.**

(6) This Order is subject to renewal upon good cause shown by the Government in the form of a Petition to Renew Emergency Court Order to Administer Nutrients, which shall be accompanied by an affidavit from either Dr. Ortega or a member of his staff attesting to the reason(s) for continued force-feeding and the efficacy of the feedings to date.

(7) The Government is directed to file a status report if any significant development arises in this case.

DONE AND ORDERED in Miami, Florida, this 23rd day of January, 2012.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All counsel of record
*Pro Se* Party